996 F.2d 312
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Albert R. MARTIN, Defendant-Appellant.
 No. 91-4220.
 United States Court of Appeals, Tenth Circuit.
 June 7, 1993.
 
 Before ANDERSON and EBEL, Circuit Judges, and GIBSON, Senior Circuit Judge.*
 ORDER AND JUDGMENT**
 EBEL, Circuit Judge.
 
 
 1
 Defendant-appellant Albert R. Martin appeals from his conviction and sentence for armed bank robbery in violation of 21 U.S.C. § 2113(a) and (d) and use of a deadly weapon during a crime of violence in violation of 18 U.S.C. § 924(c)(1). Martin contends that the district court erred in refusing to declare the minimum mandatory sentencing scheme unconstitutional as applied under the Equal Protection Clause, on the ground that the Justice Department is applying the system in a racially disparate fashion. Moreover, Martin asserts that the district court erred in refusing to apply a burden-shifting procedure like that set out in Batson v. Kentucky, 476 U.S. 79 (1986), to help him to establish discriminatory intent. We hold that even assuming that Martin's burden-shifting test applies, he has failed to establish discriminatory intent. We therefore affirm.
 
 I. FACTS
 
 2
 On August 1, 1991, Martin robbed a Utah bank. After being arrested by the police, he refused to give his name and was booked as a "white" male John Doe. He was charged that day with armed bank robbery in violation 18 U.S.C. § 2113(a) and (d).
 
 
 3
 On August 15, Martin was indicted by a federal grand jury. The indictment included the original charge of bank robbery, and added a second count charging the use of a deadly weapon during a crime of violence in violation of 18 U.S.C. § 924(c). Section 924(c) requires the imposition of a mandatory minimum consecutive sentence of five years upon conviction.
 
 
 4
 On September 17, Martin pleaded guilty to both counts of the indictment. On November 12, Martin asked the court to declare that the minimum mandatory sentencing provision of § 924(c)(1) violated the Equal Protection Clause as applied. He asserted that racial considerations had entered into the United States' attorney's (1) decision to charge him with the minimum mandatory crime and (2) refusal to reduce the charge during plea negotiations. Martin urged the district court to adopt a burden-shifting test to help him to establish discriminatory intent, and analogized to Batson v. Kentucky, 476 U.S. 79 (1986). In Batson, the Supreme Court held that once a defendant makes a prima facie showing that a prosecutor used peremptory challenges to strike minority members of a petit jury, the burden shifts to the state to come forward with a neutral explanation for challenging black jurors. Id. at 89. Under Martin's proposed test, he could make a prima facie case of purposeful discrimination by (1) offering statistical evidence showing that the Justice Department applied the minimum mandatory sentencing provisions in a racially disparate manner,[1] and (2) showing that the charges against him had been increased to include a violation of § 924(c) only after the government discovered that he was Hispanic and sometimes used the name "Albert Martinez." The prosecution would then bear the burden of establishing the neutrality of its decision to charge Martin under § 924(c)(1) and its decision not to reduce those charges.
 
 
 5
 At a sentencing hearing on November 26, 1991, the district court denied Martin's motion to declare the minimum mandatory sentencing provision unconstitutional. The court refused to apply Martin's burden-shifting theory, and noted that there was no direct evidence suggesting that racial considerations influenced the United States' attorney in Martin's case. The court sentenced Martin to 63 months imprisonment on the armed robbery count and 60 months imprisonment on the use of a deadly weapon count. The sentences were to run consecutively pursuant to § 924(c)(1). The court further ordered Martin to serve three years of supervised release following his incarceration. Martin appeals, claiming that the district court erred in failing to apply a Batson -type procedure to his case and in refusing to declare the minimum mandatory sentencing provision unconstitutional as applied.
 
 II. DISCUSSION
 
 6
 We note at the outset that even if we were to apply the burden-shifting test suggested by Martin in the context of a challenge to a mandatory minimum sentence,[2] Martin has failed to make a prima facie showing of discrimination under his own proposed test. Martin has clearly failed to prove the second prong of his proposed prima facie case, which requires a showing that the United States' attorney added and refused to drop the minimum mandatory § 924(c) charge only after discovering that Martin was Hispanic. There is simply no evidence in the record that shows that the government was aware of Martin's ethnicity before the indictment or during the plea negotiations.
 
 
 7
 Martin was indicted under the name Albert R. Martin for violating § 924(c), and there is no evidence that the prosecution knew that he was Hispanic or that he was formerly known as Albert Martinez. In fact, Martin's counsel could only point to the Presentence Report as proof that the prosecution knew that Martin was Hispanic. According to the docket sheet, however, the Presentence Report did not exist until after Martin had already pleaded guilty to the use of a deadly weapon in violation of § 924(c)(1), and thus could not have affected the U.S. attorney's decision to charge or refusal to drop the charge of a violation of the minimum mandatory provision of § 924(c)(1). Martin pleaded guilty on September 26, 1991, and the docket sheet shows that a Presentence Report was requested at that time.
 
 
 8
 Nor did Martin's motion to declare the minimum mandatory system unconstitutional notify the government of Martin's ethnicity in time for the government to take that fact into account in its charging and plea negotiation decisions. Martin did not make the motion until November 12, 1991--long after Martin was indicted and had pleaded guilty to violating § 924(c)(1).
 
 
 9
 Thus, there is no evidence in the record that the government knew that Martin was Hispanic either before the indictment or during the plea negotiations. Martin has therefore failed to make a prima facie showing of discriminatory intent under his own burden-shifting test modeled on Batson. Because there is likewise no direct evidence of discriminatory intent, we hold that Martin has failed to prove that the government violated his rights under the Equal Protection Clause by charging him with a minimum mandatory crime and by failing to reduce that charge. We therefore AFFIRM.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The statistical evidence offered by Martin appears in a United States Sentencing Commission Special Report to Congress entitled "Mandatory Minimum Penalties in the Federal Criminal Justice System" [the "Report"], issued August 1991. The Report shows that a greater proportion of black defendants--67 percent--received sentences at or above the indicated mandatory minimum, followed by Hispanics at 57.1 percent and Whites at 54 percent. Report at 76. The Report also shows that downward departures, in which prosecutors agree to drop minimum mandatory offenses, are most frequently granted to whites and least frequently to Hispanics. For example, at the 120-month level, whites received downward departures for substantial assistance in 25 percent of their cases, compared to 18.3 percent of blacks and 11.8 percent of Hispanics. Report at 82
 
 
 [2]
 Because of the manner in which this appeal is resolved, we need not, and do not, rule on whether such a burden-shifting test is appropriate